**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Park 91, LLC,*
*Debtor and Debtor in Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Arthur Goldstein, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
In re:                                                  :        Chapter 11
                                                        :
PARK 91, LLC,                                           :        Case No.: 15 - 10957 (JLG)
                                                        :
                            Debtor.                     :
------------------------------------------------------------ x


## DEBTOR'S AMENDED PLAN OF LIQUIDATION DATED SEPTEMBER 2, 2015 AS MODIFIED ON SEPTEMBER 29, 2015

## TABLE OF CONTENTS

I INTRODUCTION ................................................................................................................. 1

II DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION ......................................... 1

    A. Definitions ................................................................................................................. 1
    B. Interpretation, Rules of Construction, Computation of Time, and Choice of Law ........ 15

III DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS .............................. 17

    A. Class 1 - Secured Claim of 2013 NY Funding .......................................................... 17
    B. Class 2 – Secured Claim of Surya ............................................................................ 17
    C. Class 3 – Unpaid Real Estate Tax Claims (Secured by Property) ............................... 17
    D. Class 4 – Priority Tax Claims .................................................................................. 17
    E. Class 5 – General Unsecured Claims ....................................................................... 17
    F. Class 6 – Equity Interests ........................................................................................ 18

IV TREATMENT OF CLASSES OF CLAIMS, EQUITY INTERESTS,  AND UNCLASSIFIED CLAIMS
OR INTERESTS ................................................................................................................... 18

    A. Unclassified Claims ................................................................................................. 18

        1. United States Trustee Fees .................................................................................. 18
        2. Administrative Claims ........................................................................................ 18

            (a)    *Generally* ................................................................................................ 18
            (b)    *Accounts Payable and Other Obligations Which Arose Post-Petition* ............. 19
            (c)    *Professional Fees and Expenses* ................................................................ 19

    B. Treatment of Class 1 Secured Claim of 2013 NY Funding ......................................... 20
            (a)    *2013 NY Funding's Total Allowed Secured Claim* ....................................... 20
            (b)    *Sale, Repayment and Other Terms Absent Event of Default* ........................... 21
            (c)    *Remedies for 2013 NY Funding in the Event of Default* ............................... 22

        (i)    Event of Default ............................................................................................. 22
        (ii)    Additional Remedies on Event of Default ......................................................... 22
    C. Treatment of Allowed Class 2 Secured Claim of Surya .............................................. 23
    D. Treatment of Allowed Class 3 Real Estate Tax Claims .............................................. 23
    E. Treatment of Allowed Class 4 Priority Tax Claims .................................................... 24
    F. Treatment of Allowed Class 5 General Unsecured Claims .......................................... 24
    G. Treatment of Allowed Class 6 Equity Interests ......................................................... 24
    H. Controversy with Respect to Impairment ................................................................. 25

V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................... 25

    A. Treatment of Executory Contracts and Unexpired Leases .......................................... 25

VI MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN .................................. 26

    A. Source of Payments .................................................................................................. 26
    B. Form of Contract of Sale .......................................................................................... 27
    C. Plan Administrator and Auction Sale ........................................................................ 28

        1.  Plan Administrator .......................................................................................... 29
        2.  Auction .......................................................................................................... 33

    D. Sale, Free and Clear ................................................................................................ 35
    E. Transfer Taxes ........................................................................................................ 36
    F. Post-Petition Real Estate Escrow Account ................................................................ 36
    G. Insurance ................................................................................................................ 37
    H. Management of Post-confirmation Debtor ................................................................. 37
    I.  Guarantor Affirmation, etc. ...................................................................................... 38

J.  Gardners' Agreement to Vacate the Property ....................................................................... 39

VII  CONDITIONS PRECEDENT TO THE OCCURRENCE OF THE EFFECTIVE DATE ......................... 41

VIII  OBJECTIONS TO CLAIMS AND PROCEDURES FOR RESOLVING AND TREATING CLAIMS . 41
A.  Objections to Claims ................................................................................................................. 41
B.  Resolution of Disputed Claims ................................................................................................. 42
C.  Estimation ................................................................................................................................. 42
D.  Allowance of Disputed Claims ................................................................................................. 42

IX  PROVISIONS CONCERNING CAUSES OF ACTION ............................................................. 42

X  PROVISIONS GOVERNING DISTRIBUTIONS .......................................................................... 43
A.  Disbursing Agent ...................................................................................................................... 43
B.  Unclaimed Distributions ........................................................................................................... 43
C.  Professional Fees and Expenses ................................................................................................ 44
D.  Rounding ................................................................................................................................... 44

XI  PROVISIONS CONCERNING INJUNCTION, STAYS AND EXCULPATIONS .......................... 44
A.  Injunction and Stays ................................................................................................................. 44
B.  Exculpation ............................................................................................................................... 45
C.  Vesting of Property in the Post-confirmation Debtor ............................................................... 46

XII  CRAM DOWN .................................................................................................................... 46

XIII  ADDITIONAL TERMS ......................................................................................................... 46

XIV  RETENTION OF JURISDICTION ........................................................................................... 47
A.  Retained Jurisdiction ................................................................................................................ 47
B.  Final Decree .............................................................................................................................. 49

XV  NOTICES ............................................................................................................................ 49

XVI  MISCELLANEOUS PROVISIONS .......................................................................................... 51
A.  Applicable Law ......................................................................................................................... 51
B.  Unenforceability of Particular Provisions ................................................................................ 51
C.  Revocation and Withdrawal Prior to Confirmation .................................................................. 51
D.  Amendment and Modification ................................................................................................... 51
E.  Post-Confirmation Professional Fees ........................................................................................ 52
F.  Successors and Assigns .............................................................................................................. 52
G.  Binding Effect of Plan .............................................................................................................. 52
H.  Authorization of Corporate Action ........................................................................................... 53

## I

## INTRODUCTION

Park 91, LLC, debtor and debtor-in-possession (the "Debtor"), hereby proposes the following Plan of Liquidation (the "Plan") for the resolution of the Debtor's outstanding Creditor Claims (as hereinafter defined) and Equity Interests (as hereinafter defined).  Reference is made to the Debtor's disclosure statement dated August 6, 2015, as amended on September 1, 2015 (the "Disclosure Statement") for a discussion of the Debtor's history, business and results of operations and a summary and analysis of this Plan and certain related matters.

All holders of Claims and Equity Interests entitled to vote to accept or reject this Plan are encouraged to review the Disclosure Statement and this Plan before voting to accept or reject this Plan.  To the extent that this Plan is inconsistent with the Disclosure Statement, the terms of this Plan will govern.  No materials other than the Disclosure Statement and exhibits and schedules attached thereto or referenced therein have been approved by the United States Bankruptcy Court for the Southern District of New York for use in soliciting acceptances or rejections of this Plan.

## II

## DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

### A.    Definitions

In addition to those capitalized terms that are defined in other Articles of the Plan, the following terms (that appear in this Plan as capitalized terms) have the following meanings as used in this Plan.

1.    **"2013 NY Funding"** means 2013 NY Funding I LLC (including any of its successors, assigns, and/or designees).

2.    **"2013 NY Funding's Total Pre-Confirmation Allowed Secured Claim"** shall mean the total indebtedness owed to 2013 NY Funding pursuant to the Loan Documents and Judgment, which is in the approximate amount of $9,371,918.89 as of September 30, 2015 (as set forth in Plan section IV.B), plus such additional amounts as may accrue or become payable under the Loan Documents Judgment, including attorneys' fees and expenses.

3.    **"2013 NY Funding's Total Allowed Secured Claim"** shall mean 2013 NY Funding's Total Pre-Confirmation Allowed Secured Claim, plus such additional amounts as may accrue or become payable under the Loan Documents, the Judgment or under the Plan, including attorneys' fees and expenses.

4.    **"Administrative Claim"** means any cost or expense of administration of the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate, operating the Debtor's business, all compensation and reimbursement of expenses of professionals allowed by the Bankruptcy Court under §§ 330, 331 and 503 of the Bankruptcy Code.

5.    **"Allowed Amount"** shall mean the dollar amount of an Allowed Claim.

6.    **"Allowed Claim"** means a Claim against the Debtor to the extent that the Claim is allowed pursuant to this Plan, or (a) a proof of such Claim was (i) timely Filed; or (ii) deemed timely Filed under applicable law or by reason of an order of the Bankruptcy Court; and (b)(i) after the applicable deadlines for filing an objection to the Claim in accordance with this Plan has passed, the Debtor has not Filed an objection or any such objection is withdrawn following the expiration of such applicable deadline(s); (ii) the Claim is allowed (but only to the extent allowed) by a Final Order, or (iii) the Claim is a Claim that was Scheduled by the Debtor in

accordance with Rule 1007 of the Bankruptcy Rules and not listed as disputed, contingent or unliquidated. Prior to the time that an objection has been or may be timely Filed, for the purposes of this Plan, a Claim shall be considered an Allowed Claim if (a) the Claim has been Scheduled; (b) the amount of the Claim specified in any Filed proof of claim equals or is less than the amount of the Claim Scheduled by the Debtor as other than disputed, contingent or unliquidated; (c) the priority of the Claim specified in any Filed proof of claim is of an equal or more junior priority than the priority of the Claim Scheduled by the Debtor; and (d) the Claim has not been Scheduled as disputed, contingent or unliquidated.

7.     **"Allowed Class Claim"** means an Allowed Claim in the particular class described.

8.     **"Appointment Order"** means the order appointing the Plan Administrator, approving the auction sale procedures annexed thereto, and granting related relief.

9.     **"Appointment Event"** means the event which occurs upon the earlier of (a) the Post Sale and Payment Commencement Date and (b) a Post Event of Default Commencement Date, whichever first occurs. Upon the occurrence of such an event, 2013 NY Funding is authorized to file and serve a notice of settlement of the Appointment Order in accordance with the terms hereof, which notice will include a statement that an Appointment Event has occurred.

10.     **"Auction"** means, absent an Event of Default, the auction sale of the Property.

11.     **"Auctioneer"** means, subject to the terms of this Plan, the experienced real estate broker or auctioneer consisting of either Keen-Summit Capital Partners LLC, Sotheby's International Realty, Douglas Elliman Real Estate, Leslie Garfield, Urban Compass, or such other entity as may be agreed upon in writing by the Post-confirmation Debtor and 2013 NY Funding, which, absent an Event of Default, shall conduct the Auction.

12.    **"Auction Commencement Date"** means the date on which the Appointment
Order is entered by the Bankruptcy Court.

13.    **"Auction Deadline"** means the earlier of (a) upon the occurrence of an Event of
Default, sixty (60) days after the Post Event of Default Commencement Date, time being of the
essence, and (b) absent an Event of Default, no later than June 30, 2017, whichever first occurs,
time being of the essence.  The Auction Deadline may only be extended if agreed to in writing
by 2013 NY Funding, in its sole and absolute discretion.

14.    **"Bankruptcy Code"** means title 11 of the United States Code, as the same was in
effect on the Petition Date, as amended from time to time.

15.    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern
District of New York (Bankruptcy Judge Garrity presiding) or such other Court as may hereafter
be granted jurisdiction over the Chapter 11 Case.

16.    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the
local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New
York, and the guidelines and requirements of the Office of the United States Trustee for the
Southern District of New York, as each may from time to time be in effect and applicable to the
Reorganization Case and proceedings therein.

17.    **"Business Day"** means any day other than a Saturday, Sunday, or a "legal
holiday" as such term is defined in Bankruptcy Rule 9006(a).

18.    **"Cash"** means lawful currency of the United States and cash equivalents.

19.    **"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

20.     **"Chapter 11 Case"** means the Debtor's Chapter 11 Case for reorganization under Chapter 11 of the Bankruptcy Code, Case Number 15-10957 (JLG) entitled *In re: Park 91, LLC* now pending in the Bankruptcy Court.

21.     **"Claim"** means a claim against the Debtor or its property as defined in Section 101(5) and construed in Section 102(2) of the Bankruptcy Code.

22.     **"Claimant"** means the holder of a Claim.

23.     **"Claims Register"** means the list of Claims filed against the Debtor as maintained by the Clerk of the Court.

24.     **"Class"** means a group of Claims or Equity Interests consisting of Claims or interests which are substantially similar to each other as classified pursuant to this Plan.

25.     **"Clerk of the Court"** means the Clerk of the United States Bankruptcy Court for the Southern District of New York with a street address at One Bowling Green, New York, New York 10004-1408.

26.     **"Closing"** means the closing of the sale of the Property at which point title to the Property will be transferred to the Person or entity acquiring the Property Which, in the event of an Auction, shall occur as soon as practicable following the Auction.

27.     **"Confirmation"** means entry, within the meaning of Bankruptcy Rules 5003 and 9021, of an order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

28.     **"Confirmation Date"** means the date upon which the Confirmation Order is entered in the Bankruptcy Court.

29.     **"Confirmation Hearing"** means the hearing to be held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider Confirmation of this Plan.

30.    **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to §1129 of the Bankruptcy Code.

31.    **"Credit Bid"** means a bid by 2013 NY Funding to acquire the Property at the Auction for no cash, by crediting the amount of such bid, if successful, against the amount of 2013 NY Funding's Total Allowed Secured Claim, which is a Lien against the Property.

32.    **"Debtor"** means *Park 91, LLC*.

33.    **"Debtor's Case"** shall have the same meaning as Chapter 11 Case herein.

34.    **"Debtor-in-Possession"** means *Park 91, LLC*, as debtor-in-possession in its Chapter 11 Case.

35.    **"Debtor Self-Escrow Account"** means the segregated depository account to be opened prior to the Effective Date and maintained by the Debtor, and used solely and exclusively for payment of post-Petition Date real estate taxes.

36.    **"Deed"** means a bargain and sale deed without covenants to the Property in form and substance reasonably acceptable to the Person or entity acquiring the Property in accordance with the terms of the Plan and its title insurer, which Deed is to be executed by the Post-confirmation Debtor or the Plan Administrator as provided for herein, or by the Bankruptcy Court and delivered at the Closing for the sale of the Property for recording in the office of the appropriate County Clerk or other applicable recording office.

37.    **"Disbursing Agent"** shall mean (a) prior to the Auction Commencement Date, the Post-confirmation Debtor, and (b) after the Auction Commencement Date, the Plan Administrator, or such other entity as may be designated by the Bankruptcy Court or by this Plan.

38.    **"Disclosure Statement"** means the Debtor's Disclosure Statement to accompany this Plan, and all annexes, schedules or exhibits attached thereto or referenced therein, that relate to this Plan and that is approved by the Bankruptcy Court pursuant to §1125 of the Bankruptcy Code.

39.    **"Disputed Claim"** means a Claim or a request for payment of an administrative expense, as the case may be, as to which: (a) a proof of claim or a request for payment of an administrative expense, as the case may be, has been filed with the Court or deemed filed under applicable law or order of the Court; (b) an objection has been timely filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order.  Prior to the time that an objection has been or may be timely filed, for purposes of this Plan, a Claim shall be considered a Disputed Claim: (i) to the extent and only to the extent the amount of the Claims specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in its Schedules; (ii) any corresponding Claim listed by the Debtor in its Schedules as disputed, contingent or unliquidated, irrespective of the amount scheduled; or (iii) if no corresponding Claim has been listed by the Debtor in its Schedules.

40.    **"Distribution Dates"** means any Business Day on or after the Effective Date on or by which Distributions of Cash are made pursuant to this Plan.

41.    **"Distributions"** means the payments of Cash to creditors and others (e.g., Professional Persons) pursuant to and required by this Plan and, as context requires, issuance of Equity Interests.

42.    **"Effective Date"** means the date on which the conditions set forth in Article VII of this Plan have been satisfied or waived.

43.    **"Equity Interest"** means the rights and interests of a shareholder or membership interest in the Debtor.

44.    **"Equity Interest Holder"** means the holder of an Equity Interest.

45.    **"Estate"** means the estate created in a Chapter 11 Case under §541 of the Bankruptcy Code.

46.    **"Event of Default"** means as follows:   Each of the following events shall constitute an "Event of Default," if such failure continues for fifteen (15) days after 2013 NY Funding sends written notice thereof to the Post-confirmation Debtor at the Property and by email to smarkowitz@tarterkrinsky.com (except for the first six months of Interest only Payments, as defined in Section IV(B)(b) below, commencing October 1, 2015 which shall require a grace period of twenty (20) days): (a) the Post-confirmation Debtor fails to timely make any Interest only Payment when due; (b) the Post-confirmation Debtor fails to timely pay any Real Estate Taxes when due pursuant to the terms of this Plan; (c) the Post-confirmation Debtor fails to deposit monthly amounts into the Debtor Self-Escrow Account; (d) the Post-confirmation Debtor fails to maintain insurance on the Property, which includes 2013 NY Funding as an additional insured and/or loss payee; (e) the Post-confirmation Debtor fails to timely pay post-Petition Date real estate taxes when due; or (f) the Post-confirmation defaults under the Plan or the Loan Documents.

47.    **"Executory Contract"** means each agreement, contract or unexpired lease to which any Debtor is a party and which is executory within the meaning of §365 of the Bankruptcy Code.

48.    **"Face Amount"** means, with respect to any Claim, (a) if the holder of such Claim has not timely filed a proof of Claim thereof with the Bankruptcy Court, the amount, if any, of

such Claim scheduled and not listed as disputed, contingent or unliquidated; (b) if the holder of

such Claim has timely filed proof thereof with the Bankruptcy Court, and the Debtor has not

filed an objection, the amount stated in such proof; or (c) if a Claim has become an Allowed

Claim pursuant to a Final Order, the amount of such creditor's Allowed Claim.

49.    **"Final Decree"** means the order to be entered by the Bankruptcy Court closing

the Chapter 11 Case in accordance with section 350(a) of the Bankruptcy Code and Bankruptcy

Rule 3022.

50.    **"Final Order"** means an order or judgment of the Bankruptcy Court or other

court of competent jurisdiction, as entered on the docket of such court which, not having been

reversed, modified, amended, or stayed, and the time for seeking review of which by way of

appeal, petition for certiorari, motion for reargument and rehearing or other review having

expired, and as to which no appeal, petition for certiorari, motion for reargument and rehearing

or other review is pending, has become conclusive of all matters adjudicated thereby and is in

full force and effect.

51.    **"Foreclosure Action"** means that certain foreclosure action against the Debtor

and others in the Supreme Court of the State of New York, New York County titled *2013 NY*

*Funding I LLC v. Park 91, LLC, Michael Gardner, Lynda Gardner and the New York State*

*Department of Taxation and Finance*, under Index No. 850063/13.

52.    **"Governmental Unit"** shall have the meaning set forth at §101(27) of the

Bankruptcy Code.

53.    **"Guarantor"** means Michael Gardner.

54.    **"Guaranty"** means that continuing guaranty executed by the Guarantor guarantying the indebtedness owed by the Debtor to 2013 NY Funding, including the amounts due under the Note, the Judgment, and otherwise provided for herein.

55.    **"Insider"** shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

56.    **"Interest"** shall mean Equity Interest.

57.    **"Interest Holder"** shall mean Equity Interest Holder.

58.    **"Judgment"** means the judgment of foreclosure and sale dated January 9, 2015 signed by the Honorable Nancy M. Bannon, J.S.C., with respect to the Property in the Foreclosure Action.

59.    **"Levi Mortgage"** means that certain mortgage dated October 10, 2013, in the original principal amount of $490,000 recorded on December 13, 2013 at CRFN 2013000513515, which has been paid down to the principal amount of $300,000 and assigned to Surya.

60.    **"Lien"** means any charge against, or interest in, property of the Debtor to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust, statutory lien, pledge, encumbrance, or other security interest of any kind affecting such property.

61.    **"Loan Documents"** mean the loan documents that were the subject of the Foreclosure Action, including the Note, the Mortgage, and the Guaranty.

62.    **"Mortgage"** means that certain supplemental mortgage and mortgage consolidation modification and extension agreement, dated February 17, 2009, from the Debtor

in favor of Signature Bank, and subsequently assigned to 2013 NY Funding, by assignment dated March 15, 2013.

63.    **"New York Court"** means the Supreme Court of the State of New York, New York County.

64.    **"Note"** means that certain amended and restated mortgage note, dated February 17, 2009 in the principal amount of $7,000,000 executed by the Debtor in favor of Signature Bank and subsequently assigned to 2013 NY Funding, which note is secured by the Mortgage.

65.    **"Person"** shall have the meaning ascribed to such term in §101(41) of the Bankruptcy Code.

66.    **"Personal Property"** means all of Debtor's assets other than the Property, including without limitation, any and all of the Debtor's rents, accounts receivable, deposits, furniture, fixtures, goods, equipment, inventory, royalties, issues, profits, revenue, income, general intangibles, leases, licenses, tenancies, cash, causes of action, products, books and records and all other personal property of any kind or description owned by the Debtor and located on, attached to, for use in or about the Property.

67.    **"Petition Date"** means April 17, 2015, the date the Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court.

68.    **"Plan"** means this Plan of Liquidation, as altered, amended or modified from time to time, and all attachments and exhibits thereto and shall constitute a separate Plan for each of the Debtor.

69.    **"Plan Administrator"** means Salvatore LaMonica, Esq. and if for any reason he subsequently becomes unable to serve in such capacity, such successor as may by selected by

2013 NY Funding after consultation with the Post-confirmation Debtor and the United States Trustee, or otherwise appointed by the Bankruptcy Court.

70.    **"Plan Contribution"** means such capital as shall be necessary to fund the Plan, which shall be made by Michael Gardner.  The initial plan contribution shall be in an amount to be agreed upon by the Debtor and 2013 NY Funding prior to the Confirmation, which shall be sufficient in amount to make the initial payments due under the Plan on the Effective Date. Thereafter, Michael Gardner shall continue to make such additional capital contributions as are necessary to meet the obligations required under the Plan.

71.    **"Plan Documents"** means all documents which may be executed in furtherance of the Plan.

72.    **"Post-confirmation Debtor"** shall mean the Debtor on or after the Effective Date and may refer to such Debtor by name as defined herein.

73.    **"Post-confirmation Estate"** means the Post-Confirmation Date estate of the Debtor comprised of (a) the Post-Confirmation Estate Assets, (b) such additional or different corpus, assets or investments, if any, as the Debtor or the Post-confirmation Debtor may from time to time acquire and/or hold and administer under the provisions of the Plan, and (c) any and all dividends, rents, royalties, income, proceeds, and other receipts of, from or attributable to the foregoing.

74.    **"Post-confirmation Estate Assets"** means all of the Debtor's (a) Cash held in the accounts maintained by the Debtor or otherwise in the Estate as of the Effective Date, (b) the Property prior to the Closing, and any (c) other any other Personal Property as of the Effective Date.

75.    **"Post Event of Default Commencement Date"** means the next ensuing day, including intermediate Saturdays, Sundays, and legal holidays, immediately following the occurrence of an Event of Default.

76.    **"Post Sale and Payment Commencement Date"** means the next ensuing day, including intermediate Saturdays, Sundays, and legal holidays, immediately following the expiration of the Sale and Payment Deadline.

77.    **"Priority Claim"** means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim, or (b) a Priority Tax Claim.

78.    **"Priority Tax Claim"** means a Claim by a Governmental Unit entitled to priority pursuant to any provision of Section 507(a)(8) of the Bankruptcy Code.

79.    **"Property"** means the real property located at 1145 Park Avenue, New York, New York.

80.    **"Pro Rata"** means with respect to the holder of an Allowed Unsecured Claim or Equity Interest of a particular Class, the same proportion that the amount of such Allowed Claim or Equity Interest bears to the aggregate amount of all Allowed Claims or Equity Interests of such Class.

81.    **"Professional"** or **"Professional Person"** means all attorneys, accountants, consultants or other Persons retained under an order of the Court on behalf of the Debtor in accordance with Section 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to Sections 327, 328, 330 and 331 of the Bankruptcy Code.

82.    **"Real Estate Taxes"** means any real estate taxes, assessments, water, sewer or other, charges, and ECB or other violations that are accrued or accrue and owing by the Debtor

or Post-confirmation Debtor to any taxing or governmental authority in connection with the Property that is a Lien on the Property.

83.    **"Sale"** shall mean the sale of the Property pursuant to §§ 363 and 1123(b) of the Bankruptcy Code as may be contemplated by the Plan, and includes any Auction of the Property.

84.    **"Sale and Payment Deadline"** means, absent an Event of Default, April 30, 2017, the date by which the Debtor, shall (a) market and close on the sale of the Property, and (b) pay 2013 NY Funding the full amount of 2013 NY Funding's Total Allowed Secured Claim.

85.    **"Sale Proceeds"** shall mean the gross proceeds from the Sale of the Property.

86.    **"Scheduled"** means as set forth in the Schedules of Assets and Liabilities.

87.    **"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor as required by Section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as the same have been or may be amended from time to time.

88.    **"Secured Claim"** means a Claim that is either (a) secured by a valid perfected and enforceable Lien on property of the Debtor that is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value as set forth in an Allowed Claim or as determined by Final Order in accordance with Section 506(a) or 1111(b) of the Bankruptcy Code, of the interest of the claimant in the Debtor's property securing such Claim, or (b) for which the holder asserts a valid setoff under Section 553 of the Bankruptcy Code.  To the extent that the amount claimed by the holder of a Secured Claim exceeds the value (as determined by the Court pursuant to Section 506 of the Bankruptcy Code and Bankruptcy Rules 3012, 7001 and 9014 or as otherwise agreed to by the holder of such

Claim and the Debtor) of the property securing such Claim, the holder of such Secured Claim shall have an Unsecured Claim equal to the amount of the excess.

89.    **"Secured Tax Claim"** means a Tax Claim that is a Secured Claim.

90.    **"Surya"** means Surya Capital LLC.

91.    **"Surya Mortgage"** means that certain mortgage dated February 12, 2015 in favor of Surya in the principal amount of $450,000, which is secured by a junior mortgage on the Property.

92.    **"Transfer Taxes"** means any and all real estate transfer, stamp, sales, use, mortgage recording, or similar taxes, if and as applicable, that absent the operation of section 1146 of the Bankruptcy Code may be incurred or arise in connection with the transactions contemplated by the Plan.

93.    **"Unsecured Claim"** means a Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Priority Claim or Secured Claim.

B.    **Interpretation, Rules of Construction, Computation of Time, and Choice of Law**

In the event of a conflict between this Plan and the Disclosure Statement, the contents of this Plan shall control over the contents of the Disclosure Statement.   The provisions of the Confirmation Order shall control over the contents of this Plan.

Any term used in this Plan that is not otherwise defined in this Plan either in Article II.A (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules.   Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. The definitions and rules of construction contained herein shall also apply to the Disclosure

Statement and to the exhibits to this Plan except to the extent expressly so stated in the Disclosure Statement or in each particular exhibit to this Plan.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular Article, Section, Subsection, or Clause contained in this Plan.   The word "including" shall mean "including, without limitation" and shall be interpreted in accordance with Section 102(3) of the Bankruptcy Code.

Any reference in this Plan to an existing document or exhibit means such document or exhibit, as it may have been amended, restated, modified, or supplemented as of the Effective Date.

Captions and headings to Articles, Sections, Subsections, and Clauses in this Plan are inserted for convenience of reference only and shall neither constitute a part of this Plan nor in any way affect the interpretation of the provisions hereof.

Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

All exhibits to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when they are filed.

Subject to the provisions of any contract, certificate, bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules.

III

**DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS**

The following is a designation of the Classes of Claims and Equity Interests under this Plan. Administrative Claims (including fees and expenses of Professional Persons as permitted by Bankruptcy Code §§ 503(b)(3) and 503(b)(4), and allowed in a Final Order of the Bankruptcy Court) and statutory fees due to the United States Trustee have not been classified and are excluded from the following Classes in accordance with Section 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such different Class.

**A.    Class 1 - Secured Claim of 2013 NY Funding**

Class 1 consists of the Allowed Secured Claim of 2013 NY Funding, which, with respect to the Property is secured by the Mortgage and a valid first priority mortgage Lien against the Property.

**B.    Class 2 – Secured Claim of Surya**

Class 2 consists of the Allowed Secured Claim of Surya, which claim is secured by a junior mortgage on the Property.

**C.    Class 3 – Unpaid Real Estate Tax Claims (Secured by Property)**

Class 3 consists of unpaid Real Estate Taxes due to the City of New York.

**D.    Class 4 – Priority Tax Claims**

Class 4 consists of Priority Tax Claims.

**E.    Class 5 – General Unsecured Claims**

Class 5 consists of the holders, if any, of General Unsecured Claims.

**F.**     **Class 6 – Equity Interests**

Class 6 consists of Michael Gardner and Lynda Gardner, the sole Interest Holders.

IV

**TREATMENT OF CLASSES OF CLAIMS, EQUITY INTERESTS,
AND UNCLASSIFIED CLAIMS OR INTERESTS**

**A.**     **Unclassified Claims**

**1.  United States Trustee Fees**

All fees payable by the Debtor under Section 1930 of Title 28 of the United States Code
that have not been paid prior to the Effective Date shall be paid by the Debtor, the Post-
confirmation Debtor or the Disbursing Agent on the Effective Date.   In addition, the Post-
confirmation Debtor, or any successor thereto by merger, consolidation or otherwise, on or after
the Effective Date, shall be liable for, and the Disbursing Agent on behalf of the Post-
confirmation Debtor shall pay, such fees until the entry of a Final Decree in this case or until the
case is converted or dismissed.   The Disbursing Agent shall file post-confirmation operating
reports with the Bankruptcy Court and the United States Trustee until a Final Decree is entered.

**2.  Administrative Claims**

(a)       **Generally**

Except as provided otherwise in this Article IV of this Plan, each holder of an
Allowed Administrative Claim (*including*, without limitation, the fees and expenses incurred by
Professional Persons) and Allowed Administrative Claims arising under Bankruptcy Code
§503(b)(9)) shall be paid in full, in Cash, by the Debtor, the Post-confirmation Debtor, or the
Disbursing Agent (i) on the later to occur of the Effective Date or the date the order allowing
such Administrative Claim becomes a Final Order, or (ii) upon such other terms as may exist in

the Debtor's or the Post-confirmation Debtor's ordinary course of business; or (iii) upon such terms as may exist pursuant to Order of the Bankruptcy Court or an agreement between such Allowed Administrative Claimholder and the Debtor or Post-confirmation Debtor.

(b)    **Accounts Payable and Other Obligations Which Arose Post-Petition**

Administrative Claims representing obligations incurred by the Debtor, the Post-confirmation Debtor or Plan Administrator after the Confirmation Date shall not be subject to application to the Bankruptcy Court and may be paid by the Post-confirmation Debtor or, as applicable, the Plan Administrator, in the ordinary course of business and without further Bankruptcy Court approval.

(c)    **Professional Fees and Expenses**

As more fully set forth herein, after the Confirmation Date, the Post-confirmation Debtor and, as applicable, the Plan Administrator, shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of the Professional Persons employed by the Post-confirmation Debtor and, as applicable, the Plan Administrator, in connection with the implementation and consummation of this Plan, the claims reconciliation process and any other matters as to which the Post-confirmation Debtor or, as applicable, the Plan Administrator, shall engage or retain such Professional Persons. The fees and expenses of such Professional Persons shall be submitted monthly to the Post-confirmation Debtor or Plan Administrator, if applicable, by such Professional Persons in the form of a detailed invoice therefor, and shall be paid by the Disbursing Agent within ten (10) Business Days after such submission.  If the Post-confirmation Debtor or Plan Administrator, if applicable, disputes the reasonableness of any such invoice within the lesser of (i) ten (10) days of receipt of such proposed fees or (ii) fourteen (14) days after transmittal to the Post-

confirmation Debtor or Plan Administrator, if applicable, the Disbursing Agent shall timely pay the undisputed portion of such invoice, and the Post-confirmation Debtor of Plan Administrator, if applicable, or the affected Professional Person may, after attempting to resolve the dispute, submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

**B.   Treatment of Class 1 Secured Claim of 2013 NY Funding**

Class 1 is impaired. 2013 NY Funding will be paid the full amount of its Allowed Secured Claim over time either through a refinance or Sale of the Property. The rates for payment of the indebtedness owed 2013 NY Funding (the only Class 1 Claimholder) and the maturity date for the payment of the principal and accrued interest and fees on the 2013 NY Funding loan are proposed to be altered as provided herein, and, except as modified herein, the Note, Mortgage and other documents evidencing and securing the 2013 NY Funding indebtedness and all the terms and conditions thereof shall remain in full force and effect, and 2013 NY Funding shall retain its first priority Lien against the Property. The Debtor and Post-confirmation Debtor shall pay 2013 NY Funding's Total Allowed Secured Claim as follows:

(a)   **2013 NY Funding's Total Allowed Secured Claim**

As of the Petition Date, 2013 NY Funding's Allowed Secured Claim totaled $8,981,635.09 ("2013 NY Funding's Allowed Pre-Petition Secured Claim"). Subsequent to the Petition Date, the Debtor and Guarantor acknowledge, consent and agree that 2013 NY Funding is to be paid (i) interest on 2013 NY Funding's Allowed Pre-Petition Secured Claim at the rate of nine percent (9%) per annum (which through September 30, 2015 totals approximately $350,283.80), plus (ii) 2013 NY Funding's actual attorney fees and expenses accrued from the Petition Date (which through September 30, 2015 are estimated to be approximately $40,000).

Accordingly, 2013 NY Funding's Total Pre-Confirmation Allowed Secured Claim is approximately $9,371,918.89[1] ($8,981,635.09 + $350,283.80 + $40,000 = $9,371,918.89), plus any amounts paid or expended by 2013 NY Funding pursuant to the Plan, including, without limitation, any real estate taxes and insurance that may be paid by 2013 NY Funding.

Within three (3) Business Days of the Effective Date, the Debtor, the Guarantor and 2013 NY Funding shall agree in writing as to the actual amount of 2013 NY Funding's Total Pre-Confirmation Allowed Secured Claim as of September 30, 2015.

(b)    **Sale, Repayment and Other Terms Absent Event of Default**

Absent an Event of Default, the Post-confirmation Debtor shall have up to the Sale and Payment Deadline (*i.e.*, April 30, 2017), within which to (i) market and close on the sale of the Property, and (ii) pay 2013 NY Funding the full amount of 2013 NY Funding's Total Allowed Secured.  The Sale and Payment Deadline may only be extended if agreed to in writing by 2013 NY Funding, in its sole and absolute discretion.  For the avoidance of doubt, unless 2013 NY Funding otherwise agrees in writing, in its sole and absolute discretion, prior to the Sale and Payment Deadline, the Post-confirmation Debtor shall not be permitted to (aa) refinance the Property, or (bb) close on a Sale of the Property unless 2013 NY Funding is fully paid 2013 NY Funding's Total Allowed Secured Claim at the closing of the refinancing or Closing of such Sale.  Further, at any Auction or other Sale of the Property, 2013 NY Funding shall have the right, but not the obligation, to Credit Bid the full amount of 2013 NY Funding's Total Allowed Secured Claim.

---

[1]    The $9,371,918.89 sum is an estimate.  The final Claim will include the actual amount of all attorney's fees and expenses incurred by 2013 NY Funding from the Petition Date through September 30, 2015.

Absent an Event of Default, the Debtor will have the ability to pay 2013 NY Funding's Total Allowed Secured Claim in full at any time prior to consummation of the Auction, without penalty.

Absent an Event of Default, commencing on October 1, 2015 (the "Initial Payment Date"), 2013 NY Funding's Total Pre-Confirmation Allowed Secured Claim will bear interest at six percent (6%) per annum.

Absent an Event of Default, commencing on the Initial Payment Date (*i.e.,* October 1, 2015) and continuing monthly thereafter, the Debtor shall pay 2013 NY Funding, on or before the 1st day of each month until the Property is sold or 2013 NY Funding is paid in full, interest only payments on 2013 NY Funding's Total Pre-Confirmation Allowed Secured Claim at the rate of six percent (6%) per annum. The Debtor estimates such payments shall equal $46,859.59 per month (which amount is subject to change depending on the final amount of 2013 NY Funding's Total Claim) (each, an "Interest only Payment" and collectively, the "Interest only Payments").

(c)    **Remedies for 2013 NY Funding in the Event of Default**

(i)    Event of Default

Upon the occurrence of an Event of Default, among the other rights provided to 2013 NY Funding herein, 2013 NY Funding is authorized to proceed with settling the Appointment Order in accordance with the terms hereof. Upon entry of the Appointment Order, the Property will be vested under the control of the Plan Administrator, who shall proceed with the sale of the Property at the Auction in accordance with the terms of the Plan.

(ii)    Additional Remedies on Event of Default

Upon the occurrence of an Event of Default, (aa) all amounts due and owing to 2013 NY Funding by the Debtor, including without limitations, 2013 NY Funding's Total

Allowed Secured Claim, shall immediately be due and payable to 2013 NY Funding; (bb) forbearance from foreclosure of the Judgment and other amounts due under the Plan shall immediately cease; and (cc) 2013 NY Funding shall be entitled to exercise all of its rights, claims and remedies of any kind or nature, at law, in equity, or otherwise, that 2013 NY Funding has or may have against the Debtor, the Guarantor, any other party to the Loan Documents and/or the Foreclosure Action, or otherwise in connection with the Loan Documents, the Judgment, the Foreclosure Action, the Property and the Plan, without further Order of any Court or any notice, demand or other action whatsoever by 2013 NY Funding or otherwise. Also, effective immediately upon the occurrence of an Event of Default, interest shall accrue on the total amount of 2013 NY Funding's Total Allowed Secured Claim then due and owing to 2013 NY Funding at the rate of nine percent (9%) per annum.

## C.    Treatment of Allowed Class 2 Secured Claim of Surya

Class 2 is impaired.  Surya shall retain its Liens on the Property to the same extent as existed on the Petition Date.  Surya shall be paid in full together with interest at the rate of 14% per annum from the proceeds of the Sale of the Property only after the Class 1 claimholder is fully paid.  Commencing September 1, 2015, the Debtor shall make monthly interest-only payments on Surya's Allowed Secured Claim in the amount of $8,750.

## D.    Treatment of Allowed Class 3 Real Estate Tax Claims

Class 3 is impaired.  The Post-confirmation Debtor shall pay all Allowed outstanding pre-Petition Date Real Estate Taxes to the City of New York over a period of twelve (12) months from the Effective Date at the statutory interest rate.  The first eleven monthly payments shall be in the amount of $5,000 each with the balance remaining to be paid on the twelfth month from the Effective Date.  The City of New York shall retain its Liens on the Property to the same extent as existed on the Petition Date.  Further, notwithstanding anything herein or in the

Disclosure Statement to the contrary, all Liens of the City of New York shall survive confirmation of the Plan, whether or not a proof of claim for any claim secured by such lien is filed.

**E.    Treatment of Allowed Class 4 Priority Tax Claims**

Class 4 is not impaired. Each holder of a Priority Tax Claim that has not been paid prior to the Effective Date shall be paid in full (in equal quarterly payments) over two (2) years from the Effective Date at the statutory rate of interest. The holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of interest, or on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim, except to the extent allowed as a part of an Allowed Priority Tax Claim pursuant to § 507(a)(1) of the Bankruptcy Code. In the event the Property is sold pursuant to the terms of this Plan, all Class 4 Claims shall be paid the Allowed Amount of its Class 4 Claim from the Sale Proceeds.

**F.    Treatment of Allowed Class 5 General Unsecured Claims**

Class 5 is not impaired. The Debtor does not believe there are any holders of Class 5 Claims. To the extent there are any holders of Class 5 Claims, they shall be paid in full, plus interest at the rate of four (4%) percent per annum from the Petition Date, in Cash, on the Effective Date.

**G.    Treatment of Allowed Class 6 Equity Interests**

Class 6 is not impaired. Michael Gardner, the Debtor's Managing Member, and his wife Lynda Gardner are the sole Class 6 Interest Holders and they shall retain their Interests as they existed on the Petition Date. Neither Michael nor Lynda Gardner shall receive any distribution under the Plan. However, in the event the Property is sold pursuant to this Plan, the Class 6 Interest Holders shall receive any Sale Proceeds left over after the payment of all Allowed Administrative Claims and Class 1 through 5 Allowed Claims.

**H.**     **Controversy with Respect to Impairment**

In the event of a controversy as to whether a Claimant or holder of an Equity Interest is impaired, the Court shall, after notice and a hearing, determine such controversy.

**V**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.**     **Treatment of Executory Contracts and Unexpired Leases**

As set forth in the Schedules, the Debtor had no Executory Contracts, including unexpired leases, as of the Petition Date and the Debtor and Guarantor affirm and acknowledge that the Debtor has not entered into any Executory Contracts, including unexpired leases, through the Confirmation Date.  From and after the Confirmation Date, the Debtor and Post-confirmation Debtor will not, without the prior written consent of 2013 NY Funding, enter into any Executory Contracts, including, without limitations, any leases of residential or non-residential real property, use and occupancy or similar agreements in connection with the Property, prior to the Property either being sold in accordance with the terms of the Plan or 2013 NY Funding's Total Allowed Secured Claim otherwise being paid in full.

Notwithstanding the foregoing, unless (a) there is then pending before the Bankruptcy Court a motion to assume any such Executory Contract, including unexpired leases, or (b) the Bankruptcy Court has entered an order extending the period during which a motion may be made to assume such Executory Contract, including unexpired leases, and such a motion is filed with the Bankruptcy Court before the expiration of such period, as of the Confirmation Date, any Executory Contract entered into by the Debtor that has not yet been (i) assumed and assigned, or (ii) assumed, shall be deemed to be rejected by the Debtor as of the Confirmation Date.  The Confirmation Order shall be deemed an order under § 365(a) of the Bankruptcy Code rejecting

any such Executory Contracts.  Any Allowed Claim arising from the rejection of an Executory

Contract shall be classified and treated as a General Unsecured Claim in Class 5 under the Plan.

## VI

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### A.    Source of Payments

The Plan will be funded from the Plan Contribution and the Sale of the Property.  The

Plan Contribution will primarily be from Michael Gardner's earnings as an investment banker.

Except as otherwise provided herein, Professional Fees and any other Distributions under the

Plan shall be paid by the Plan Contribution, to the extent necessary.

The Post-confirmation Debtor or, if applicable, the Plan Administrator shall sell the

Property pursuant to §§ 363 and 1123(b)(4) of the Bankruptcy Code.  Absent an Event of

Default, the Post-confirmation Debtor shall sell the Property by no later than April 30, 2017,

time being of the essence.  Following the Auction Commencement Date, the Plan Administrator

shall sell the Property no later than the Auction Sale Deadline, time being of the essence.

The Debtor previously retained Town Fifth Avenue LLC ("Town Fifth") as its real estate

broker, which term expired August 31, 2015.  The term was not and shall not be extended by the

Debtor, the Post-confirmation Debtor or the Plan Administrator without 2013 NY Funding's

prior written consent.

Any subsequently retained real estate broker, which may include Town Fifth, and the

terms of any brokerage agreement to be entered into by the Debtor, the  Post-confirmation

Debtor or the Plan Administrator (each, a "Broker Agreement") must (a) be reasonably

acceptable to 2013 NY Funding in a writing signed by 2013 NY Funding prior to the Broker

Agreement being entered into; (b) expressly provide that the Broker Agreement and any contract

for the Sale of the Property entered into in connection therewith is subject to the Sale and Payment Deadline, and will terminate and be of no force or effect, with the broker and any proposed purchaser(s) of the Property having no recourse whatsoever against the Debtor, 2013 NY Funding, the Plan Administrator or the Property, other than possibly the return of the Deposit, if the Closing of the Sale of the Property and full payment of 2013 NY Funding's Secured Claim does not occur on or before expiration of the Sale and Payment Deadline, time being of the essence; (c) expressly provide that the Broker Agreement will terminate and be of no force or effect, with the broker and any proposed purchaser(s) of the Property having no recourse whatsoever against the Debtor, 2013 NY Funding, the Plan Administrator or the Property, other than possibly the return of the Deposit, if any Event of Default occurs, time being of the essence; (d) expressly provide that if 2013 NY Funding acquires the Property, the broker shall not be entitled to a commission; and (e) include an acknowledgement that 2013 NY Funding (including its members, officers, employees, counsel and other professionals), shall have no liability or responsibility whatsoever for the payment of any fees, commissions or expenses to any broker in connection with, or otherwise relating to any Sale, transfer or other conveyance of the Property.

**B.**     **Form of Contract of Sale**

The form of contract of sale and the terms thereof must be reasonably acceptable to 2013 NY Funding in a writing signed by 2013 NY Funding prior to the contract being entered into, and must be for consideration sufficient to pay 2013 NY Funding's Total Allowed Secured Claim in full (unless otherwise agreed to in writing by 2013 NY Funding).  Any real estate contract must (a) include a minimum 10% deposit ("Deposit"); (b) expressly provide that it is subject to the Sale and Payment Deadline, and will terminate and be of no force or effect, with the proposed purchaser of the Property having no recourse whatsoever against the Debtor, 2013

NY Funding, the Plan Administrator or the Property, other than possibly the return of the
Deposit, if the Closing of the sale of the Property and full payment of 2013 NY Funding's Total
Allowed Secured Claim does not occur on or before expiration of the Sale and Payment
Deadline, time being of the essence; and (c) expressly provide that the contract will terminate
and be of no force or effect, with the proposed purchaser of the Property having no recourse
whatsoever against the Debtor, 2013 NY Funding, the Plan Administrator or the Property, other
than possibly the return of the Deposit, if any Event of Default occurs, time being of the essence.
(Notwithstanding the foregoing, in the event 2013 NY Funding determines, in its sole and
absolute discretion, to go forward with and close upon a contract pending at such time, the
contract will not be terminated and will remain in full force and effect).

## C.    **Plan Administrator and Auction Sale**

Upon the occurrence of an Appointment Event (*i.e.*, upon the earlier of (a) the Post Sale
and Payment Commencement Date and (b) a Post Event of Default Commencement Date,
whichever first occurs), 2013 NY Funding is authorized to file and serve a notice of settlement
("Notice of Settlement") of the Appointment Order, in substantially the form of the order to be
attached to the Confirmation Order, which Notice of Settlement will include a statement that an
Appointment Event has occurred. Service of the Notice of Settlement and Appointment Order on
not less than three (3) Business days' notice (the "Notice Period") via e-mail to (i) counsel for
the Debtor at smarkowitz@tarterkrinsky.com; (ii) counsel for the City of New York at
hshull@law.nyc.gov; (iii) Surya at JDave@suryacap.com; and (iv) the Office of the United
States Trustee at solid970@gmail.com, will constitute good and sufficient notice for all purposes
under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, pursuant to
Bankruptcy Rules 2002, 9006, 9007 and 9013, and Bankruptcy Code sections 102(1) and 105(a),
and any requirements for other notice are hereby waived.    The Appointment Order will be

entered as soon as practicable after expiration of the Notice Period.

Effective immediately upon the entry of the Appointment Order (*i.e.*, the Auction Commencement Date), the Property shall automatically be vested under the control of the Plan Administrator and transitioned for sale at the Auction to be conducted by the Plan Administrator, with the assistance of the Auctioneer. The Auction shall occur by the Auction Deadline, which may only be extended if agreed to in writing by 2013 NY Funding, in its sole and absolute discretion.

### 1.  Plan Administrator

(a)      **Appointment of Plan Administrator**.  Effective immediately on the Auction Commencement Date, the Plan Administrator is hereby designated, appointed and vested with full authority and control over the Post-confirmation Estate, including, without limitation, the Property, in all respects to effectuate and consummate the Auction of the Property in accordance with the terms of the Plan. The Plan Administrator will have the powers and responsibilities of a Disbursing Agent and trustee in all respects as it relates to the Sale and disposition of the Property and any Sale Proceeds.

(b)      **Duties and Powers**.  (i) On the Auction Commencement Date, the Plan Administrator will be the representative of the Post-confirmation Estate and successor to the Debtor and Post-confirmation Debtor pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and will have the rights and powers provided in the Bankruptcy Code, in addition to any rights and powers granted herein and in the Confirmation Order. In the Plan Administrator's capacity as the representative of the Post-confirmation Estate and successor to the Debtor, the Post-confirmation Debtor and the Post-confirmation Estate, the Plan Administrator will be the successor-in-interest to the Debtor and Post-confirmation Debtor with respect to all interests

constituting Post-confirmation Estate Assets and with respect to the creditors holding Claims under the Plan. The Plan Administrator shall act in a fiduciary capacity for the holders of all Allowed Claims under the Plan and shall have all of the rights, powers and duties of a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code. The Plan Administrator shall assume all of the responsibilities, duties and obligations of the Post-confirmation Debtor's former officers and directors that arise after the Auction Commencement Date and is empowered and authorized to satisfy such responsibilities, duties, and obligations without further corporate authority as may have been required prior to the Auction Commencement Date. The Plan Administrator will pay from the Post-confirmation Estate all ordinary and necessary costs of protecting, preserving, disposing, liquidating and realizing upon the Post-confirmation Estate. The Plan Administrator shall also be vested with all rights, powers, and benefits afforded to a "trustee" under 11 U.S.C. § 108. The Plan Administrator will liquidate and administer the Post-confirmation Estate Assets, including making distributions from the Post-confirmation Estate, all in accordance with the terms of the Plan. Unless otherwise excused or exempted from doing so by the Bankruptcy Code, the Plan Administrator will abide by all laws, including tax laws. The Plan Administrator shall have sole and exclusive authority for the retention of professionals to assist in any manner on and after the Auction Commencement Date. (ii) The Plan Administrator will have the power to take any and all actions which, in the business judgment of the Plan Administrator, are necessary or appropriate to fulfill his/her obligations under the Plan, including, but not limited to, each of the powers set forth below:

> (aa)    hold, manage, protect, administer, collect, sell, liquidate, prosecute, transfer, resolve, settle, adjust, invest, distribute, or otherwise dispose of any Post-confirmation Estate Assets solely for the benefit of Holders of Allowed Claims in accordance with the Plan;

(bb)    make all distributions to be funded under the Plan;

(cc)    assume control over all of the Post-confirmation Debtor's and Post-confirmation Estate's assets and operation of the Property and shall be authorized to continue the usual and ordinary operations of the Post-confirmation Debtor in the ordinary course of the Post-confirmation Debtor's business pending the Closing for the Property in accordance with the terms hereof, and to spend funds of the Post-confirmation Debtor and the Post-confirmation Estate for such purpose. The Plan Administrator shall need either the prior written consent of 2013 NY Funding or an Order of the Bankruptcy Court for any actions to be taken by him/her with respect to the Property that are outside the usual and ordinary operations of the Post-confirmation Debtor's business;

(dd)    pay all necessary expenses incurred in connection with the duties and responsibilities of the Plan Administrator under the Plan to the extent of available funds;

(ee)    administer, implement and enforce all provisions of the Plan;

(ff)    administer the Plan and the Post-confirmation Estate Assets;

(gg)    abandon any Post-confirmation Estate Assets;

(hh)    to invest Cash in accordance with section 345 of the Bankruptcy Code or otherwise as permitted by order of the Bankruptcy Court;

(ii)    to purchase and carry all insurance policies and pay all premiums and costs deemed necessary and advisable;

(jj)    undertake such other responsibilities as are reasonable and appropriate in connection with the Plan; and

(kk)    take all actions necessary to effectuate the Auction of the Property and disposition of the Sale Proceeds in accordance with the terms hereof.

(c)    **Compensation**.    The Post-confirmation Estate shall pay reasonable compensation for the services provided by the Plan Administrator and any other Professionals or other entities retained by the Plan Administrator as permitted under the Plan. The Plan Administrator shall be entitled to receive from the Post-confirmation Estate compensation for

his/her services hereunder based on an hourly rate of $575 per hour for actual time spent, plus reasonable out of pocket expenses. If there are insufficient funds in the Post-confirmation Estate to pay the foregoing compensation, such amounts will be paid from the first proceeds of sale of the Property.

(d)    **Plan Administrator Exculpation**. **To the extent permitted by section 1125(e) of the Bankruptcy Code, the Plan Administrator, together with his/her partners, members, officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan from all Persons, entities (as defined in the Bankruptcy Code), holders of Claims and Interests, and all other parties in interest, from any and all causes of action, of any kind or nature, arising out of the discharge by the Plan Administrator of the powers and duties conferred upon the Plan Administrator by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, <u>except</u> solely for actions or omissions arising out of the Plan Administrator's willful misconduct or gross negligence. To the extent permitted by section 1125(e) of the Bankruptcy Code, no Holder of a Claim or an Interest, or representative thereof, shall have or pursue any cause of action (i) against the Plan Administrator or his/her partners, members, officers, directors, employees, agents and representatives for making Plan Distributions in accordance with the Plan, or (ii) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan. Nothing contained in this section shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Post-confirmation Estate to compel the making of Distributions contemplated by the Plan on account of such Allowed Claim.**

(e)   **Execution of Documents**.  Except as otherwise provided herein, from and after the Auction Commencement Date, the Plan Administrator is hereby authorized, and shall, execute, release and deliver, for and on behalf of the Post-confirmation Debtor and the Post-confirmation Estate, such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan, without the need for any additional approvals, authorizations or consents.  This includes any documents required to effectuate the Auction of the Property and the Closing in accordance with the terms of the Plan, including, without limitation, the Deed, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.

(f)   **Miscellaneous**.  Upon the completion of all acts required to be performed by the Plan Administrator under the Plan and/or the filing by the Plan Administrator of a certification to that effect with the Bankruptcy Court (which may be included in the application for entry of the Final Decree), the Plan Administrator shall be relieved of his/her duties under the Plan for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Plan Administrator, the Post-confirmation Estate, or payments to be made in connection therewith.  From and after the Auction Commencement Date, the Post-confirmation Estate and the Plan Administrator shall not be required to file any document, or take any action, to withdraw the Post-confirmation Debtor's business operation from any States where the Debtor or Post-confirmation Debtor previously conducted business operations.

2.   **Auction**

(a)   From and after the Auction Commencement Date the Plan Administrator shall proceed with selling the Property at the Auction, with the assistance of the Auctioneer. 2013 NY Funding shall be deemed the stalking horse bidder at the Auction with an opening

Credit Bid in an amount to be determined by 2013 NY Funding, in its sole and absolute discretion, with 2013 NY Funding having the right, but not the obligation, to Credit Bid up to the full amount of 2013 NY Funding's Total Allowed Secured Claim at the Auction.  If 2013 NY Funding pays for or otherwise advances to the Plan Administrator advertising or other expenses in connection with the Auction, such sum will be added to 2013 NY Funding's Total Allowed Secured Claim.

      (b)      The Closing shall occur as soon as practicable following the Auction. Upon receiving the Sale Proceeds from the Auction, the Plan Administrator shall, to the extent there are funds available, make the following payments in accordance with herewith and their priority under the Plan:

      (i)      First, to (aa) the Plan Administrator for any fees and expenses incurred by the Plan Administrator and any professionals retained by the Plan Administrator, and (bb) the U.S. Trustee fees through entry of the Final Decree (reserving funds as needed to cover such fees and expenses through entry of the Final Decree);

      (ii)      Second, any Real Estate Taxes which are Liens on the Property having priority over the Allowed Secured Claim of 2013 NY Funding (which shall be paid at the Closing or as soon thereafter as reasonably practicable);

      (iii)      Third, 2013 NY Funding until 2013 NY Funding's Total Allowed Secured Claim is fully paid (which shall be paid at the Closing or as soon thereafter as reasonably practicable); and

      (iv)      Thereafter, in order of priority in accordance with Article IV of the Plan.

      (c)      Upon disbursing the Sale Proceeds from the Auction, the Plan Administrator shall file a certification to that effect with the Bankruptcy Court (which may be included in the application for entry of the Final Decree).

      (d)      Pending the Closing of the Sale of the Property, the Plan Administrator

shall be authorized to continue to operate, maintain and preserve the Property.

(e)    The Plan Administrator is authorized to retain the Auctioneer to assist him/her with the Sale of the Property.

## D.    Sale, Free and Clear

At the Closing of any Sale of the Property, including following the Auction, the Property shall be transferred to the Person or entity acquiring the Property free and clear of any Liens, Claims, Interests or encumbrances of whatever kind or nature accrued to the date of the Closing (including, without limitation, Executory Contracts, including any leases or use and occupancy agreements relating to the Property, or rights of first refusal affecting the Property), with such Liens, Claims, Interests or encumbrances, if any, to attach to the proceeds of sale, and subject to any Liens, Claims, Interests or encumbrances of whatever kind or nature thereafter accrued, but entitled to the benefits and subject to the burdens of all easements of record against the Property as of the date of the Closing.  Any liens, claims, or encumbrances accruing from and after the date of the Closing shall be the responsibility of the Person or entity acquiring the Property at the Closing.   The Person or entity acquiring the Property, including 2013 NY Funding if it acquires the Property through a Credit Bid at the Auction, or otherwise, or another Person or entity in accordance with the terms of the Plan, shall receive (w) the Deed for the Property, executed by the Post-confirmation Debtor or Plan Administrator, as the case may be, in accordance with the terms of the Plan, for and on behalf of the Debtor, the Post-confirmation Debtor and the Post-confirmation Estate to be recorded in the appropriate office of the County Clerk or such other applicable recording offices and location(s) as may be appropriate; (x) together with any and all New York State and other governmental transfer tax returns; and (y) any and all affidavits, certificates and other documents which may be necessary or are usual and customary to facilitate the recording of the Deed subject to the Bankruptcy Code section 1146(a)

exemption, and to effectuate the transfer of the Property. The Property is being sold pursuant to the Plan "AS IS", "WHERE IS" in its condition on the date of the Closing.

### E.    Transfer Taxes

There will be no Transfer Taxes owed on any transaction in connection with or in contemplation of the Plan to the fullest extent permitted by § 1146 of the Bankruptcy Code. For the avoidance of doubt, any Sale, transfer or conveyance of the Property, including, without limitation, at an Auction by the Plan Administrator, shall be deemed a transfer under, pursuant to, in connection with and in furtherance of the Plan, and such Sale, transfer and delivery of any and all instruments of transfer, including without limitation, the Deed for the Property, in connection therewith shall not be taxed under any transfer taxes permitted by § 1146(a) of the Bankruptcy Code as interpreted by the Supreme Court in *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326 (2008). Such exemption shall include any Sale, transfer or conveyance of the Property to 2013 NY Funding in any manner provided for in the Plan Documents.

### F.    Post-Petition Real Estate Escrow Account

The Debtor and Post-confirmation Debtor shall remain current in the payment of all post-Petition Date and post-Confirmation Date real estate taxes. Each month the Debtor and, after the Effective Date, the Post-confirmation Debtor shall deposit into the Debtor Self-Escrow Account an equal monthly installment in an amount sufficient to timely pay such real estate taxes as and when they become due. Prior to the Confirmation the Debtor and 2013 Funding shall agree in writing on the amount that is to be deposited monthly by the Post-confirmation Debtor into the Debtor Self-Escrow Account. For the avoidance of doubt, the funds deposited into the Debtor Self-Escrow Account shall be used by the Debtor and Post-confirmation Debtor solely and exclusively for the payment of post-Petition Date and post-Confirmation Date real estate taxes.

Each month the Post-confirmation Debtor shall provide copies of the Debtor Self-Escrow Account statement showing the account balance therein to 2013 NY Funding. On the Auction Commencement Date, all of the funds in the Debtor Self-Escrow Account shall be turned over to the Plan Administrator for administration of such funds in accordance with the terms of the Plan.

### G.    Insurance

The Debtor and Post-confirmation Debtor shall maintain insurance on the Property in an amount to be agreed upon by the Debtor and 2013 NY Funding prior to the Confirmation, and include 2013 NY Funding as an additional insured and/or loss payee (as determined by 2013 NY Funding). On the Auction Commencement Date, the Plan Administrator will also be added as an additional insured and/or loss payee (as determined by the Plan Administrator). 2013 NY Funding shall have the right, but not the obligation, in its sole and absolute discretion, to pay the insurance premiums or insure the Property if the Debtor fails to timely do so or if necessary to protect and preserve the Property, in which event the amounts paid shall be included as part of 2013 NY Funding's Total Allowed Secured Claim.

### H.    Management of Post-confirmation Debtor

During the period from the Effective Date through the Auction Commencement Date, the Post-confirmation Debtor, through Michael Gardner, will continue to manage the Property. No management fees will be paid to the Post-confirmation Debtor or Michael Gardner. From and after the Auction Commencement Date, the Plan Administrator will manage the Property.

No individuals other than Michael Gardner are proposed to serve, after confirmation, as a managing member of the Post-confirmation Debtor. No insiders other than Michael Gardner will be employed or retained by the Post-confirmation Debtor, however, Michael Gardner shall not be entitled to any compensation from the Post-confirmation Debtor.

## I.      Guarantor Affirmation, etc.

The Guarantor acknowledges, agrees, consents, affirms and ratifies that (a) as of the

Petition Date, the Debtor and the Guarantor are indebted to 2013 NY Funding in respect of the

loans and advances under the Loan Documents, including, without limitation, the Guaranty, the

Note and the Judgment, in the aggregate amount of $8,981,635.09, which sum is unconditionally

due and owing to 2013 NY Funding without offset, defense, reduction or counterclaim of any

kind or nature; (b) as of the day immediately preceding the Initial Payment Date (*i.e.*, September

30, 2015), the Debtor and the Guarantor shall be indebted to 2013 NY Funding in respect of the

loans and advances under the Loan Documents, including, without limitations, the Guaranty, the

Note, the Judgment and the Plan Documents, in the aggregate amount of the 2013 NY Funding's

Total Pre-Confirmation Allowed Secured Claim, which sum shall be unconditionally due and

owing to 2013 NY Funding as of such date without offset, defense, reduction or counterclaim of

any kind or nature; and (c) from and after the Initial Payment Date (*i.e.*, October 1, 2015) the

Debtor and the Guarantor shall be indebted to 2013 NY Funding in respect of the loans and

advances under the Loan Documents, including, without limitations, the Guaranty, the Note, the

Judgment and the Plan Documents, in the aggregate amount of the 2013 NY Funding's Total

Allowed Secured Claim, which sum shall be unconditionally due and owing to 2013 NY

Funding without offset, defense, reduction or counterclaim of any kind or nature.

Within three (3) Business Days of the Effective Date, the Debtor, the Guarantor and 2013

NY Funding shall agree in writing as to the actual amount of 2013 NY Funding's Total Pre-

Confirmation Allowed Secured Claim as of September 30, 2015.

Although by signing the Plan the Guarantor is hereby acknowledging, agreeing,

consenting, affirming and ratifying his guarantee of 2013 NY Funding's Pre-petition Date

Allowed Secured Claim, 2013 NY Funding's Total Pre-Confirmation Allowed Secured Claim,

and 2013 NY Funding's Total Allowed Secured Claim, if requested, the Guarantor agrees that from time to time that he will execute a reaffirmation of his guarantee of such debts to 2013 NY Funding.

## J.    Gardners' Agreement to Vacate the Property

The sole occupants of the Property are the Debtor's Interest Holders, Michael Gardner and Lynda Gardner (together, the "Gardners"). The Gardners hereby acknowledge, affirm, consent and agree that they do not have a lease at the Property. The Gardners further acknowledge, affirm, consent and agree that it will be necessary for the Gardners to have vacated the Property in advance of any Auction of the Property, in order to maximize the value of the Property at such Auction. Accordingly, by no later than thirty (30) days after the Auction Commencement Date, time being of the essence, each of the Gardners, individually and as sole Interest Holders acknowledges, consents and agrees to (i) vacate and surrender possession of the Property, including removing all personal effects and other personalty of the Gardners and any other Persons, tenants and entities, if any, from the Property; and (ii) provide the Plan Administrator, including his/her agents and representatives, with immediate and complete access to the Property.

In furtherance of the foregoing agreement, the Gardners acknowledge, consent and agree to execute and deliver to counsel for 2013 NY Funding prior to the Confirmation, to be held in escrow until the occurrence of the Auction Commencement Date, all documents reasonably necessary to cause the Gardners to be evicted and removed from the Property immediately on and after the thirty-first (31st) day after the Auction Commencement Date, without further notice, motion or order of any court, which documents may include a surrender agreement; a consent judgment of possession; and/or a warrant of eviction. In addition, the Gardners consent and agree that, subject to the Bankruptcy Court, the Confirmation Order will include, *inter alia*, the

following language and provide for the following relief effective immediately on and after the

thirty-first (31st) after the Auction Commencement Date:

(a) the U.S. Marshal is authorized and directed to assist the Plan Administrator, including his/her agents and representatives, to gain access to the Property and to evict the Gardners, and any other Persons, tenants and entities, if any, from the Property, including the Gardners, and to remove all personal effects and other personalty of the Gardners' and any other Persons, tenants and entities, if any, from the Property;

(b) the Plan Administrator, including his/her agents and representatives, are authorized under the supervision and with the assistance of the U.S. Marshal, to take all necessary steps to take possession of the Property, including breaking open and entering said premises and evicting all persons, tenants and entities located within said premises;

(c) the Plan Administrator will act as substitute custodian of any and all property seized at the Property pursuant to the Plan and shall hold harmless the U.S. Marshals Service and its employees from any and all claims, asserted in any court or tribunal, arising from any acts, incidents, or occurrences in connection with the eviction of and seizure and possession of such personal effects and other personalty of the Gardners and any other Persons, tenants and entities, if any, from the Property the Debtor's property, including third-party claims;

(d) the Plan Administrator will account for all personal property and effects seized and removed pursuant to the Plan, shall compile a written inventory of all such property and shall provide a copy to the U.S. Marshal who shall include such a copy with his return to the Bankruptcy Court;

(e) the Post-Confirmation Estate will be responsible for any and all charges incurred with respect to the eviction of the Gardners and any persons, tenants and/or other entities occupying the Property and for any and all charges incurred with respect to the removal of the Gardners' personal effects and any other personalty remaining in the Property, at the time of the eviction including but not limited to storage charges, which charges shall be paid from the proceeds of the Auction Sale;

(f) the Plan Administrator is authorized to do such things, execute such documents and expend such funds as may be necessary to effectuate the terms and condition of the Plan, including, without limitation, retaining such persons to change the locks of the Property to control access to the Property;

(g) anyone interfering with the execution of this Order is subject to arrest by the U.S. Marshal and/or his or her representative;

(h) The Gardners shall not make an application of any kind, for any reason whatsoever, to stay their eviction by the U.S. Marshall as set forth herein or to otherwise remain in

possession of the Property later than thirty (30) days after the Auction Commencement Date;

(i) The Gardners are hereby ordered and directed to make no motion, application or order to show cause in any court or forum to stay their eviction by the U.S. Marshal as set forth herein or to otherwise remain in possession of the Property later than thirty (30) days after the Auction Commencement Date. In the event that the Gardners make such an application, in contravention hereof, the same shall be deemed denied; and

(j) In the event that the Gardners make such an application in contravention of the Confirmation Order and this Plan, the U.S. Marshal shall commence or prosecute their eviction as set forth herein without a stay or further notice, and the Gardners shall be liable to the Plan Administrator and 2013 NY Funding LLC for all of their respective legal fees and other costs and expenses incurred in connection with opposing or in any way related to such application.

## VII

## CONDITIONS PRECEDENT TO THE OCCURRENCE OF THE EFFECTIVE DATE

The Effective Date will occur only if all of the following conditions have been fulfilled or waived:

1.     The Confirmation Order in form reasonably acceptable to the Debtor and 2013 NY Funding shall have been entered by the Bankruptcy Court.

2.     The Plan Contribution shall have been deposited into Debtor's counsel's attorney trust account.

## VIII

## OBJECTIONS TO CLAIMS AND PROCEDURES
## FOR RESOLVING AND TREATING CLAIMS

### A.    Objections to Claims

All objections to Claims shall be filed by the Debtor or Post-confirmation Debtor and served on the holders of such Claims within sixty (60) days after the Confirmation Date. If the objection to a proof of Claim that relates to a Disputed Claim has not been filed by the applicable

date, the Claim to which the proof of Claim relates shall be treated as an Allowed Claim for purposes of Distributions under the Plan.

**B.** **Resolution of Disputed Claims**

Disputed Claims shall be divided into two (2) portions: the "non-disputed portion" and the "disputed portion." The Post-confirmation Debtor shall pay the non-disputed portion of a Disputed Claim in accordance with Plan provisions for payment of a Claim in its Class.

**C.** **Estimation**

The Debtor or the Post-confirmation Debtor may, at any time, request that the Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Post-confirmation Debtor have previously objected to such Claim. The Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.

**D.** **Allowance of Disputed Claims**

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which the Claim becomes an Allowed Claim, or as soon thereafter as is practicable, pay to the holder of such Allowed Claim the amount of Cash that such holder would have been entitled to receive under the Plan if such disputed portion of such Claim had been an Allowed Claim on the Effective Date.

## IX

### PROVISIONS CONCERNING CAUSES OF ACTION

Except as otherwise provided herein or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Post-confirmation Debtor shall retain, and may, with its determination of the best interest of the estate, enforce any claims, rights and

causes of action that have been or may be commenced by the Debtor including, but not limited to, those arising under §§ 544 through 550 of the Bankruptcy Code.

# X

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.   Disbursing Agent

Prior to the Auction Commencement Date, the Post-confirmation Debtor shall act as Disbursing Agent under the Plan.  From and after the Auction Commencement Date the Plan Administrator shall act as Disbursing Agent.  Prior to the Auction Commencement Date, and except as otherwise provided herein, Michael Gardner shall be in charge of all matters relating to the Distributions required by the Plan.  From and after the Auction Commencement Date, the Plan Administrator shall be in charge of all matters relating to the Distributions required by the Plan.  In the event that the Disbursing Agent changes prior to the, entry of an order of Final Decree closing the Debtor's Chapter 11 case, the Bankruptcy Court and the United States Trustee shall be notified in writing of the identity and address of the new Disbursing Agent.

### B.   Unclaimed Distributions

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders unless no Proof of Claim has been filed, in which case then to the address set forth on the Schedules filed with the Court, unless superseded by a written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent of a change of address.

If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Disbursing Agent is notified in writing of such holder's

then current address, at which time all Distributions shall be made to such holder, without interest.

## C.    Professional Fees and Expenses

Each of the Professionals requesting compensation for services rendered and reimbursements disbursed in the Chapter 11 Case shall file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Case incurred through the Confirmation Date within forty five (45) days after entry of the Confirmation Order.

## D.    Rounding

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect the rounding of such fraction to the nearest whole cent with the one-half cent being rounded up to the nearest whole cent.

## XI

## PROVISIONS CONCERNING INJUNCTION, STAYS AND EXCULPATIONS

## A.    Injunction and Stays

Except as otherwise expressly provided herein and related documents, all Persons or entities who have held, hold or may hold Claims against, or Interest in, the Debtor are, with respect to any such Claims or Interests, permanently enjoined on and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner directly or indirectly, any suit, action or other proceeding of any kind (including without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the Post-confirmation Debtor, any of its property, including, without limitation, the Property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entities, including, as applicable, the Plan Administrator, (b) enforcing, levying, attaching,

collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against the Debtor or the Post-confirmation Debtor, any of its property, including, without limitation, the Property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entities, including, as applicable, the Plan Administrator, or any property of any such transferee or successor, (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance or Lien of any kind against the Debtor or the Post-confirmation Debtor, any of their property, including without limitation, the Property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities, including, as applicable, the Plan Administrator, and (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor or the Post-confirmation Debtor, any of their property, including without limitation, the Property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities, including, as applicable, the Plan Administrator.

B.    <u>Exculpation</u>

To the extent permitted by section 1125(e) of the Bankruptcy Code, neither the Debtor, 2013 NY Funding, the Plan Administrator, nor any of their respective officers, directors, employees and other agents, financial advisors, attorneys and accountants shall have any liability to any holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Case or the property to be distributed under the Plan, except for liability based upon willful misconduct or gross negligence as finally determined by the Bankruptcy Court.

**C.**    **Vesting of Property in the Post-confirmation Debtor**

As of the Effective Date, all assets of the Debtor shall vest in the Post-confirmation Debtor, free and clear of all Liens, Claims and Interests, except as otherwise provided in the Plan or the Confirmation Order.

## XII

## CRAM DOWN

In the event Classes of Claims or Equity Interests do not vote to accept this Plan, the Debtor reserves its right to invoke the "Cram Down" provisions of Bankruptcy Code §1129(b). In the event the Debtor exercises such right, the Debtor reserves the right to modify this Plan to the extent, if any, the confirmation of this Plan under §1129(b) of the Bankruptcy Code requires modification.

## XIII

## ADDITIONAL TERMS

A.    The Debtor, the Post-confirmation Debtor, the Guarantor and, as applicable, the Auctioneer and Plan Administrator shall, at all times, reasonably cooperate with 2013 NY Funding in connection with the implementation of the Plan, including the Sale of the Property in accordance with the terms hereof. This includes, without limitation, providing reasonable access by 2013 NY Funding, the Plan Administrator, and each of their respective agents, representatives and potential bidders, to the Property and providing copies of documents as may reasonably be requested by 2013 NY Funding or the Plan Administrator.

B.    Subject to Sections 363 (m) and (n) of the Bankruptcy Code, if 2013 NY Funding shall be the Person or entity entitled to acquire the Property following the Auction or otherwise, it shall have the right to assign its successful Credit Bid for no additional consideration and the right to close thereunder at or prior to the Closing for the Property. Any such assignee shall be

entitled to all of the rights of 2013 NY Funding under the Plan, including but not limited to the right to take title to the Property free and clear of any and all (a) Liens, Claims, Interests and encumbrances, of any kind or nature as provided under the Plan, and (b) Transfer Taxes.

XIV

**RETENTION OF JURISDICTION**

## A.    Retained Jurisdiction

From and after the Confirmation Date and until such time as the Chapter 11 Case is closed, the Bankruptcy Court shall retain jurisdiction over the Debtor's Chapter 11 Case for all purposes permitted under the Bankruptcy Code, including, without limitation, the following:

1.    To hear and determine any dispute relating to the Plan or any property described in the Plan and to enforce its provisions, including the summary transfer provisions in the event of a default by the Post-confirmation Debtor, including, without limitation, if there is an Event of Default.

2.    To hear and determine all issues arising out of any motions, applications, adversary proceedings or contested or litigated matters in the Chapter 11 Case pending at the Confirmation Date or commenced thereafter.

3.    To order recovery of any assets of the Debtor, whether title is presently held in the name of the Debtor or a third party.

4.    To hear and determine motions to approve the Sale of the Property pursuant to § 363 or § 1123(b)(4) of the Bankruptcy Code and/or the rejection or assumption of Executory Contracts under § 365 of the Bankruptcy Code.

5.    To hear and determine all issues relating to any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Chapter 11 Case.

6.     To hear and determine all objections to Claims and all controversies concerning classification, allowance, valuation, liquidation, estimation, or satisfaction of Claims.

7.     To make orders allowing amendment of the schedules filed in the Chapter 11 Case for any purpose including, without limitation, to prosecute objections to Claims not previously listed as disputed, contingent or unliquidated.

8.     To hear and determine all applications for compensation of Professional and similar fees and reimbursement of expenses arising out of or relating to the case or any Claims.

9.     To hear and determine any and all motions to abandon property of the Debtor's Estate or Post-confirmation Estate.

10.     To make such other orders or give such directions as permitted by § 1142 of the Bankruptcy Code.

11.     To consider and order any modifications or amendments requested to the Plan.

12.     To remedy any defect or omission or reconcile any inconsistency in the Plan or the Confirmation Order in such manner as may be necessary or desirable to carry out the purposes and intent of the Plan.

13.     To make all orders necessary or appropriate to carry out the provisions of the Plan.

14.     To enforce all orders previously entered by the Bankruptcy Court.

15.     To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the Bankruptcy Code.

16.     To hear and determine all matters and disputes relating to the Auction Commencement Date, appointment of the Plan Administrator, the Auction, any Event of Default, any Sale or other disposition of the Property, and any Closing.

17.     Without limiting the generality of the foregoing and notwithstanding the Effective

Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive

jurisdiction over the Post-confirmation Estate after the Effective Date, including, without

limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in

connection herewith or therewith, including, without limitation, the implementation of this Plan.

**B.     <u>Final Decree</u>**

The Final Decree closing the Chapter 11 Case shall <u>not</u> be entered until after either the

Property is sold in accordance with the terms hereof or 2013 NY Funding is paid the full amount

of 2013 NY Funding's Total Allowed Secured Claim.   For the avoidance of doubt, the Chapter

11 Case shall remain open and pending before the Bankruptcy Court until after either the

Property is sold in accordance with the terms hereof or 2013 NY Funding is paid the full amount

of the 2013 NY Funding Total Allowed Secured Claim.

**XV**

**<u>NOTICES</u>**

All notices, requests, demands, claims and other communications hereunder shall be in

writing.   Any notice, request, demand, claim or other communications hereunder (each, a

"<u>Notice</u>") shall be deemed duly given on the date of service of such Notice as long as it is sent

either (a) by a recognized national overnight courier service for next day delivery, charges

prepaid, or (b) by registered or certified mail, return receipt requested, and, in each case,

addressed to the intended recipient as set forth below:

If to the Post-confirmation Debtor
(or the Disbursing Agent prior to the Auction Commencement Date):

Park 91, LLC
1145 Park Avenue
New York, New York 10128

Attn: Michael Gardner

With a copy to:  Tarter Krinsky & Drogin LLP
1350 Broadway, 11th Floor
New York, New York 10018
Attn:   Scott S. Markowitz, Esq.
        Arthur Goldstein, Esq.

If to the Plan Administrator
(or the Disbursing Agent after to the Auction Commencement Date):

Salvatore LaMonica, Esq.
LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Wantagh, New York 11793

If to 2013 NY Funding:

c/o ERG Property Advisors
777 Third Avenue, 27th Floor
New York, New York 10017
Attn: James Guarino

With a copy to:  Westerman Ball Ederer Miller
  Zucker & Sharfstein, LLP
1201 RXR Plaza
Uniondale, New York 11556
Attn:   Thomas A. Draghi, Esq.

Any person may change the address at which he, she or it is to receive notices for purposes of this Plan by sending written notice pursuant to this provision to the Post-confirmation Debtor, the Disbursing Agent, 2013 NY Funding and, after the Auction Commencement Date, the Plan Administrator, as provided in this Article.

# XVI

## MISCELLANEOUS PROVISIONS

**A.    Applicable Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights and obligations arising under this Plan are governed under New York Law.

**B.    Unenforceability of Particular Provisions**

Should any provision in this Plan be determined to be unenforceable in whole or in part, such determination shall in no way limit or affect the enforceability and operative effect of the remainder of this Plan, including any of its provisions to the extent not determined to be unenforceable.

**C.    Revocation and Withdrawal Prior to Confirmation**

The Debtor reserves the right to revoke and withdraw this Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void, and in such event nothing contained herein shall be deemed to constitute a waiver or release of any claim by or against the Debtor, or any other entity or to prejudice in any manner the rights of the Debtor, or any entity in any further proceedings involving the Debtor.

**D.    Amendment and Modification**

The Debtor may propose amendments to, or modification of, this Plan at any time at or before Confirmation.  After Confirmation of this Plan, the Debtor may, with the approval of the Bankruptcy Court and so long as it does not materially adversely affect the treatment of any Claim or Equity Interest, amend this Plan to remedy any defect or omission or reconsider any

inconsistencies in this Plan or in the order of Confirmation as necessary or desirable to carry out the purpose and effect of this Plan.

**E.      Post-Confirmation Professional Fees**

Subsequent to the Confirmation Date, the Debtor, the Post-confirmation Debtor and, as applicable, the Plan Administrator, shall be authorized and directed to pay reasonable professional fees and expenses relating to the post-confirmation administration of its Estate and this Plan incurred by its Professionals.

**F.      Successors and Assigns**

The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person, including, without limitation, any Chapter 7 trustee that may be subsequently appointed.

**G.      Binding Effect of Plan**

Upon the Effective Date, all of the provisions of this Plan shall be binding on the Debtor, on all holders of Claims, on all holders of Equity Interests, and on all other entities who are affected (or whose interests are affected) in any manner by this Plan.

**H.**      **Authorization of Corporate Action**

1.      Upon the entry of the Confirmation Order, all actions contemplated by the Plan

will be deemed authorized and approved in all respects (subject to the provisions of the Plan).

On the Confirmation Date, appropriate members or authorized signatories of the Debtor, the

Post-confirmation Debtor and the Plan Administrator are authorized and directed to execute and

to deliver any and all agreements, documents and instruments contemplated by the Plan and/or

necessary for the consummation of the Plan, and all such actions taken or caused to be taken

shall be deemed to have been authorized and approved by the Bankruptcy Court without the need

for any additional authorizations, approvals or consents.  This includes, without limitation, any

and all instruments required to effect a transfer of the Property, including without limitation, the

Deed and any documents to satisfy any Lien in furtherance of the terms of the Plan.

Dated: New York, New York
        September 2, 2015
                29

                                    **PARK 91, LLC**
                                    Debtor and Debtor-In-Possession

                                    By: _____
                                        Michael Gardner, Managing Member


                                    *Prepared by:*

                                    **TARTER KRINSKY & DROGIN LLP**
                                    *Attorneys for Park 91, LLC*
                                    *Debtor and Debtor-in-Possession*


                                    By: _____
                                        Scott S. Markowitz
                                        Arthur Goldstein
                                        1350 Broadway, 11th Floor
                                        New York, New York 10022
                                        (212) 216-8000

Affirmed, Consented, Ratified and Agreed with respect
To Sections V.A (Executory Contracts and Leases),
VI.I (Guarantor Affirmation and Reaffirmation),
And VI.J (Gardners' Agreement to Vacate the Property)


By: _____
    Michael Gardner, Individually, as Guarantor
    and Interest Holder


Affirmed, Consented, Ratified and Agreed with respect
To Sections V.A (Executory Contracts and Leases),
And VI.J (Gardners' Agreement to Vacate the Property)


By: _____
    Lynda Gardner, Individually and as Interest Holder